THE SEACAUCUS.[1]

THE EDWIN HAWLEY.

VAN WIE v. THE SEACAUCUS.

HOBOKEN LAND & IMP. CO. v. THE EDWIN HAWLEY.

(*District Court, S. D. New York.* February 11, 1888.)

1. COLLISION—COLORED LIGHTS—ASSUMING POSITION IN WHICH LIGHTS OBSCURED.

The law that requires the colored lights of a vessel to be visible for 10 points around the horizon is not complied with when a vessel voluntarily puts herself in a situation in which her lights will continue for some time obscured over a considerable part of the area in which other vessels are liable to be moving.

2. SAME—FERRY-BOAT AND TUGS—LIGHTS OBSCURED BY INTERVENING VESSELS—SPECIAL DISTINGUISHING LIGHTS.

The ferry-boat S., bound to Hoboken, was about one-third of the distance from the New York shore, headed nearly up river, and moving about 11 knots an hour. A large Erie ferry-boat was a length ahead of her, and a little on her port bow. The small tug H., bound for New York, and making about 10 knots, came suddenly around the stern of the Erie boat, across the course of the S., and was run into and sunk by the latter. Neither vessel had observed the colored lights of the other until within a few seconds of the collision, and when it was unavoidable; the reason given by each being that the lights of the other were hidden by the Erie boat. *Held*, both in fault for navigating voluntarily at a high rate of speed, in such a position, as regards the Erie boat, that their lights were obscured to vessels on the other side; and as the evidence indicated that the high, special distinguishing lights of each might have been seen by the other over the Erie boat, *held*, that the failure to perceive them was a further fault in each.

In Admiralty. Libel for damages.

Two libels to recover damages sustained in consequence of a collision, brought by Van Wie, owner of the steam-tug Edwin Hawley, against the ferry-boat Seacaucus, and by the Hoboken Land & Improvement Company, owner of the Seacaucus, against the Edwin Hawley.

*Carpenter & Mosher*, for the Edwin Hawley.

*Abbett & Fuller*, for the Seacaucus.

BROWN, J. At about half past 6 P. M. on October 21, 1887, a collision occurred between the steam tug Hawley, bound from Hoboken to North Moore street, New York, and the ferry-boat Seacaucus, on her trip from Barclay street to Hoboken. The night was dark, but clear, and

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

good for seeing lights; the tide strong ebb; the wind fresh from the north-west. The Hawley, at the moment of collision, was headed nearly directly across the river towards the New York shore; the Seacaucus nearly up river. The port bow and guard of the latter ran over the Hawley's starboard side, knocking off her pilot-house, and breaking a hole in her side, from which she shortly afterwards sank. The ferry-boat was somewhat damaged; she was crowded with passengers, but none were injured. The collision was about one-third across from the New York shore. Each ascribed the collision to the fault of the other, and the above cross-libels were filed to recover their respective damages.

On the Hawley there was no lookout, other than the pilot, who was at the wheel; on the Seacaucus there were two,—one at the bow, who, upon his own testimony, I must find was paying little attention; the other was on the upper deck, near the pilot-house. Neither boat, nor the lights of either, were seen by the other until within a distance of only one or two lengths apart, the reason assigned on each side being that a large Erie ferry-boat had been previously going between the other two, so as to hide each from the other until a few seconds before the collision, when each came into view of the other. If, at that moment, the courses of the Hawley and the Seacaucus were nearly at right angles, as the witnesses of the former state, and which is not very clearly negatived by the witnesses of the Seacaucus, collision was, in my judgment, clearly unavoidable, since the Seacaucus was going at a speed of about 11 knots, through the water against the tide; the Hawley, at a speed of about 10 knots, crossing the tide. In that situation, I think, the best efforts of both combined would not have averted collision. There is no question that the regulation colored lights were properly burning on each. In addition to those the Hawley carried a white head-light forward, and a white staff-light about 33 feet above the water. The Seacaucus, besides her side lights, carried a special distinguishing green light about 40 feet above the water, visible, as her pilot says, about half a mile off. As the regulation lights of the two boats were not seen by the other, I must assume the truth of what both sides affirm, that the Erie boat, for a considerable time, hid each from the other until just before the collision. There is, however, a singular contradiction; three witnesses on the part of the Hawley affirming that she came down on the westward side of the Erie boat, and rounded to the eastward under the latter's port quarter as she was sheering to the westward; while four witnesses on the part of the Seacaucus assert that the Hawley did not go to the westward of the Erie boat, but to the northward and eastward of her, along her starboard side, coming into view as she emerged from the Erie boat's starboard quarter. The Erie boat had left Chambers street for Pavonia ferry, on the Jersey shore, some distance up the river, about the same time that the Seacaucus left Barclay street. After getting out a little in the river both boats hauled up on nearly parallel courses, heading nearly up river, but a little across. Both were going at about the same speed; the Seacaucus one length, or possibly two lengths, astern of the Erie boat, which was larger and higher. The pilot of the Seacaucus testifies that the Erie boat bore

a little on his port bow; other witnesses from the Seacaucus say that she was running a little on their starboard bow.   They continued going upon nearly parallel courses until the Erie boat had reached the proper place for her to begin to make her turn for the Jersey shore, when she swung towards the westward, and very shortly thereafter the Hawley and the Seacaucus were for the first time disclosed to each other's view.   The testimony of the pilot of the Hawley, as he is not otherwise discredited, must be taken as controlling, as respects the course of his own boat.   He shaped his course, as he testifies, to the westward from the time he saw the Erie boat half a mile distant, and passed her upon her westward or port side.   I adopt this view, therefore, though it would make little difference, as to the question of the fault of either, upon which side of the Erie boat he went.

The causes of the collision rest equally, as it seems to me, with both vessels.   The acts of each, which brought the collision about, are almost precisely analogous.   The Seacaucus was going within a couple of hundred feet of the Erie boat, a much larger one, so close that her own colored lights were thereby kept obscured over a considerable space of the river to the northward and westward.   The tug likewise came down on the opposite side of the ferry-boat, and rounded her stern suddenly, and within 40 feet of it, so that the collision could not be avoided.   Both were navigating so near to the large Erie boat that their lights were obscured to vessels on the other side, and both were going at a high rate of speed.   This mode of navigation was voluntary on the part of each; each is therefore chargeable with the risk incident to it.   The tug had abundant room for keeping off from the Erie boat, so as not to endanger any other boat that might be found near her when she turned and crossed under the Erie boat's stern.   The Seacaucus could just as easily have gone at a reasonable distance away from the Erie boat.   The law that requires the colored lights to be visible for 10 points around the horizon is not complied with when a vessel voluntarily puts herself in a situation in which her lights will continue for some time obscured over a considerable part of the area in which other vessels are liable to be moving. *The C. F. Young,* 25 Fed. Rep. 457, 461; *The Howard,* 30 Fed. Rep. 280.

Upon the testimony I must find also that the special distinguishing lights authorized by the inspectors to be carried on each of these vessels, in addition to the ordinary colored lights, and which were carried by each, were visible; and might, and should, have been seen by each.   The navigation of the boats so close to the larger Erie boat, which must have been known to hide their own colored lights from a part of the field in which, by law, they were required to be visible, made it incumbent upon each vessel to observe carefully what lights might have been seen over the Erie boat.   Had sufficient attention been given, each, I am satisfied, would have seen the special and distinguishing light of the other, and thus would have been apprised of the other's near presence.   Both vessels, therefore, are chargeable with similar faults, and the damages and costs of each must be divided, with a reference to ascertain the damages, if not agreed upon.