## THE ALBANY.

### McCULLOUGH et al. v. THE ALBANY.

(District Court, S. D. New York. April 27, 1896.)

COLLISION—FERRYBOATS—LIGHTS HID BY INTERVENING·VESSEL.
    Libellants' ferryboat S. left Chambers Street and navigated up the North river a little to the eastward of the higher ferryboat Hamburg, which hid the red light of the S. from the view of vessels to the westward. The ferryboat A. coming down from Weehauken was also obscured from the view of the S. by the intervening ferryboat Hamburg. The S. and the A. both turned at about the same time to pass under the stern of the Hamburg, and they first came in sight of each other when they were too near to avoid collision: *Held*, that each was to blame for swinging so near under the stern of a high intervening boat, and the damages were therefore divided.

Wilcox, Adams & Green, for libellants.
Ashbel Green, and H. E. Kinney, for respondents.

BROWN, District Judge.	About 9:45 p. m. of February 20, 1895, the libellants' ferryboat Susquehanna left her slip at the foot of Chambers Street, New York, on a trip to the Pavonia Ferry, Jersey City.	As the Susquehanna came out the Hoboken ferryboat Hamburg, a double-decked boat, was passing the slip on her way to Hoboken.	The Susquehanna rounded up the river from 100 to 200 feet to the eastward of the Hamburg with her bows lapping the Hamburg's stern.	The ferryboat Albany was at the same time on her way down from Weehauken, bound for Franklin Street, and was to the northward and westward of the Hamburg, so that the colored lights of the Albany and the Susquehanna were obscured from the view of each other by the high double deck of the Hamburg.	The latter was going somewhat faster than the Susquehanna, and when off Franklin Street, and probably about one-third of the way across the river, and heading a little to the Jersey shore, she drew away from between the Susquehanna and the Albany, so that the red lights of each became suddenly visible to the other a few hundred feet apart.	Each ferryboat at once ported her helm, and very soon each reversed her engine; but they came in collision before the progress of either was stopped.	The witnesses for the Susquehanna contend that at the time of collision the Susquehanna was heading nearly straight up the river, and that the collision was brought about by the improper swing of the Albany for her slip at Franklin Street

under the Hamburg's stern. The witnesses for the Albany contend that the Susquehanna was swinging under the Hamburg's stern to the westward, across towards the Pavonia ferry, which was but a little above Franklin Street on the other side of the river. The tide was the first of the ebb; the current slight.

This is one of three collision cases which I have heard in succession, in which the boats have come in collision by passing under the stern of another intervening vessel which obscured them from each other's view. In this case, as in the others, on looking carefully over the testimony, it is evident that the collision did not arise from anything that can be called a legal fault after the vessels were aware of each other's near presence. The primary fault was in proceeding so near to another high vessel as to be concealed from the view of others likely to be approaching, so as to leave no sufficient time for any effective manoeuvres after the proximity of the other vessel was known.

The present case is much similar to that of The Seacaucus, 34 Fed. 68, which on appeal was affirmed. It was there held to be imprudent and unjustifiable navigation for boats voluntarily and unnecessarily to go so near to another intervening vessel that their side lights, which are required to be visible for 10 points, could not be seen at all, in time to give sufficient notice of the courses and positions of the respective vessels.

There is a great deal of discrepancy in the details of the testimony, as to the heading of both boats at the time of the collision, and just before. It is not probable that the Susquehanna was heading nearly straight up river, or had come up on that heading. That is not consistent with all the testimony as to the place of collision, which was much farther out than she was when she rounded up river on leaving Chambers Street; nor does it agree with the testimony as to the course of the Hamburg, which was certainly a point and a half towards the Jersey shore, and probably more; and off Franklin Street, moreover, the Susquehanna was so nearly opposite the Pavonia Ferry, that it is in the highest degree unlikely that on the first of the ebb she would not have been previously crossing towards her slip as the other witnesses say she was doing, if the Hamburg did not prevent her. I have no doubt that her probable course was the true one, and that she was in fact delayed somewhat in heading to the westward by the Hamburg, which was in her way.

The testimony also as to the change of lights seen, namely, the green light seen on each boat almost immediately after seeing the red light, which was very speedily shut in again, shows that both were on the swing to port, and that each boat attempted to counteract this swing by a port helm, although I do not think that the Albany had previously turned so much to the eastward as her witnesses state. Each boat, I find, was swinging under the stern of the Hamburg, in order to go to her slip. The testimony of the witnesses on the Delaware as to the course of the Susquehanna, is entitled to very little weight, because they were not in position to judge accurately of any change in her course, while the witness from the Hamburg was in an excellent position to observe it.

The navigation in this case was all the more imprudent on the part of each of these ferryboats, for the reason that each knew the customary navigation of the other, and that they were liable to meet near this time and place. There was not the least need of navigating or rounding so near to the Hamburg, and each must be held to blame, as in the Seacaucus suit. A further circumstance showing the lack of observation on the part of the Albany is, that the white pole lights of the Susquehanna must have been visible over the Hamburg had they been looked for, as they were about 50 feet above the water. They were not, however, observed. But this circumstance does not absolve the Susquehanna; as she had no right voluntarily and unnecessarily to hide her side lights behind the Hamburg, and then draw under her stern without giving any such timely notice by lights and signals as is required by law for the purpose of securing prudent and safe navigation.

The damages and costs are, therefore, divided.